UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

**WOODMAN'S FOOD MARKET, INC.,**

        Plaintiff,

    v.

**THE CLOROX COMPANY,**
    **-and-**
**THE CLOROX SALES COMPANY,**

        Defendants.

Case No. 14-CV-<u>734</u>

---

## AFFIDAVIT OF CLINTON W. WOODMAN
## IN SUPPORT OF THE ISSUANCE OF INJUNCTIVE RELIEF

---

STATE OF WISCONSIN    }
                   } ss.
COUNTY OF DANE        }

Clinton W. Woodman, being first duly sworn on oath, states as follows:

1)      I am employed by the Plaintiff, Woodman's Food Market, Inc. (hereinafter "Woodman's"), as its Vice President. I am authorized to endorse this Affidavit on behalf of Woodman's.

2)      I make this Affidavit on my personal knowledge.

3)      Plaintiff, Woodman's Food Market, Inc., is a Wisconsin Corporation with its principal offices located at 2631 Liberty Lane, Janesville, Wisconsin 53545. Woodman's is engaged in the operation of retail grocery stores in the states of Wisconsin and Illinois. Woodman's is an employee-owned corporation with approximately 3,200 employees, 2,600 of which work in Wisconsin.

4)      Woodman's is, and at all times relevant to this action has been, the owner and operator of a chain of 15 retail grocery stores located in the states of Wisconsin and Illinois.  It operates 6 stores and has its principal offices in the Western District of Wisconsin.

5)      Woodman's has been a customer of Clorox and Clorox Sales for many years, purchasing over 480 different products (hereinafter referred to as "SKUs") at the present time. A list of the products produced and sold by Clorox to Woodman's, as of October 1, 2014, is attached hereto, made a part hereof, and is marked as **Exhibit 1**.

6)      Until October 1, 2014, among the list of different SKUs purchased by Woodman's from Clorox and Clorox Sales were a number of "large pack" products.  A list of those large pack products is attached hereto, made a part hereof, and is marked as **Exhibit 2**. Large pack products are just that, larger containers or packages of a particular product that are typically offered to customers at a cost savings per unit of contents over the prices that would typically be paid per unit of that same product when sold in smaller containers or packs.  The product within a "large pack" is of the same quality and grade as the product contained within a smaller pack of that same product.

7)      During the year immediately preceding October 1, 2014, Woodman's had purchased the listed dollar amounts of each of the following large pack products from Clorox:

- 192 count Glad Freezer Quart bags - $53,543.88

- 112 count Glad Freezer Gallon bags - $50,711.76

- 144 count Glad Food Storage Zipper Gallon bags - $53,677.36

- 460 count Glad Food Storage Zipper Sandwich bags - $132,210.00

- 150 count Glad Tall Kitchen Drawstring 13 Gallon bags - $164,072.10

- 200 count Glad Tall Kitchen Quick-Tie 13 Gallon bags - $37,334.00

- 42 pound Fresh Step Scoop kitty litter - $176,482.40

- 42 pound Scoop Away Complete kitty litter - $178,891.20

- 2-20 pound Kingsford charcoal - $467,763.60

- 2-64 ounce Kingsford Twin Lighter Fluid - $49,896.00

- 3 pack of 120 ounce Clorox Regular Concentrated Bleach - $70,515.20

- 2-40 ounce Hidden Valley Ranch Dressing - $246,816.00

8)      Woodman's is a unique grocery chain in the United States.  It operates what are believed to be the 15 largest grocery stores in the world, averaging in excess of 235,000 square feet in size per store.

9)      Woodman's is a regional grocery store chain.  The first store opened in Janesville, Wisconsin, in 1921.  There are currently 12 Woodman's stores in Wisconsin, and 3 in Illinois.

10)     Woodman's stores have the overall appearance of a warehouse food retailer, with industrial utility food display shelves, products displayed on pallets and inventory stacked in shipping boxes above the shelving on top of the industrial utility shelves.

11)     Because Woodman's strives to offer its customers the lowest price on the products it sells, it has become the grocer of choice for those purchasing groceries on a budget.

12)     Because of the large size of its stores, Woodman's competes directly for retail customers with the two largest warehouse retailers, Sam's Club and Costco.

13)     Many of Woodman's customers cannot afford to purchase memberships at retailers like Sam's Club or Costco.

14)     Upon information and belief, Sam's Club memberships cost between $45 and $100 per year, and Costco memberships cost between $55 and $110 per year.

15)     There are Sam's Club stores in each of the market areas served by Woodman's stores.

16)     There are Costco stores in each of the market areas served by Woodman's, except for Janesville, Beloit, Appleton and Onalaska, Wisconsin, and Rockford, Illinois, but Costco is currently building a new store in Rockford.

17)     Both Sam's Club and Costco stores sell grocery items at retail to consumers in direct competition with Woodman's, offering many of the same Clorox products sold by Woodman's.

18)     Prior to October 1, 2014, Woodman's was able to purchase large pack items from Clorox and Clorox Sales, but that is no longer the case today.

19)     Principal representatives of Woodman's met on September 9, 2014, at the Woodman's headquarters in Janesville, Wisconsin, with a representative of Clorox, Mr. Bob Richardson, the Director of Sales, Customer and Industry Affairs.

20)     At the September 9, 2014 meeting, Woodman's was presented with a document labeled "Differentiated Products Offering."   A true and correct copy of that document is attached hereto, made a part hereof, and is marked as **Exhibit 3**.

21)     **Exhibit 3** advised Woodman's that, as of October 1, 2014, Woodman's would be placed into a classification Clorox referred to as "General Market retailers (Grocery, Mass, Drug, including .com for now.")

22)     **Exhibit 3** attempts to explain how Clorox determined that Woodman's, a retail grocer, would be placed into a different channel than two of its competitor retail grocers, Sam's Club and Costco, first, by stating its desire to "simplify its go to market strategy with Club and General Market packs," and second, by stating that "Clorox can streamline our

- 4 -

operations and deliver our best cost to serve by regulating the products we sell to customers/channels," and third, by stating that this program, "[m]eets customer's desire for differentiated products from manufacturers," and finally, that the program "[c]reates the right assortment of sizes and brands for customers/channels based on their shoppers, and maximizes both the customer and Clorox sales."

23)   None of these justifications addresses the prohibition against discriminating in price, or discounts or allowances or promotional services between different purchasers of commodities of like grade and quality, set forth in 15 U.S.C.A. §§ 13(a), 13(d) or 13(e).

24)   At that meeting, Clorox advised Woodman's that as of October 1, 2014, Woodman's would no longer be allowed to purchase large packs of any Clorox product, including all but one of the large pack items it had been buying for years from Clorox. The one exception to this ban is the 2 pack of 20 pound bags of Kingsford charcoal.

25)   Woodman's was advised that it could continue to purchase smaller packages containing the identical grade and quality of all of these products, but that the unit price it had been paying for those products would no longer be available, and in virtually all cases, would rise significantly.

26)   Woodman's was advised that, starting on October 1, 2014, only Sam's Club, Costco and BJ's (a large scale retailer not active in Wisconsin) would be allowed to purchase these large "club packs" as they were described by the Clorox representative.

27)   **Exhibit 3** states that "The Clorox Company reserves the right to sell differentiated products to customers and/or channels of customers at our discretion."

28)   Contrary to the wording of **Exhibit 3**, Clorox is not proposing to sell differentiated products to the two "channels." It is merely limiting its willingness to provide a

promotional service, a special (large) package of its products, to three favored customers, Sam's Club, Costco and BJ's, in violation of 15 U.S.C.A. § 13(e).

29)     As a consequence of this new policy, two of Woodman's primary competitors, Sam's Club and Costco, will be able to buy and sell at retail special large packs of Clorox products that Woodman's will no longer be able to sell, giving a significant competitive advantage to these competitors of Woodman's.  In addition, because the unit price on these large pack items is significantly lower than the price charged per unit for small packs of products, Sam's Club and Costco will generally be able to buy and ultimately sell these large pack items at significantly lower unit costs than will be available to Woodman's and ultimately its retail customers.

30)     The dollar quantity of these large pack items purchased by Woodman's in the year preceding October 1, 2014, evidences that Woodman's has a significant established clientele that has come to rely upon Woodman's as their source for buying these large pack products at an affordable price.  In addition to price considerations, many of Woodman's large pack customers also prefer to purchase large packs because of the convenience of being able to purchase and carry those products home less frequently than would be the case if they are forced to purchase smaller packs.

31)     The unit prices Woodman's must pay to purchase the smaller packs now being offered to it under this new Clorox policy are significantly higher than the unit prices Woodman's customers are accustomed to be paying.  A list of the unit prices for each of these large pack products as they existed immediately prior to October 1, 2014, and the unit prices offered to Woodman's by Clorox for the smaller packs of those same products that

Woodman's can now purchase, as of October 1, 2014, is attached hereto, made a part hereof and is marked as **Exhibit 4**.

32)     Without competition from Woodman's, Sam's Club and Costco will be able to raise their prices on large pack items.

33)     Many of Woodman's customers cannot afford to purchase memberships in retailers like Sam's Club and Costco, and the loss of the ability to purchase large packs of Clorox products at Sam's will simply mean that those customers will have no choice but to pay higher prices for those products in the future.

34)     Woodman's has requested that it be allowed to continue purchasing the special large packs that it has been purchasing for years, but Clorox has denied that request, indicating that only Sam's Club, Costco, and BJ's will be allowed to receive the special large size packaging in the future.

35)     Woodman's has an inventory of large pack items on hand that will enable it to continue offering these products for a brief period of time, but when those supplies are exhausted, Woodman's will be forced to purchase the smaller packs.

36)     Thereafter, Woodman's will no longer be able to offer these large pack Clorox products to its customers at the low unit prices to which they have been accustomed once its supplies of large pack items is exhausted.

37)     Woodman's is justifiably concerned that its current large pack purchasers will stop buying their Clorox products from Woodman's once Woodman's is forced to sell the smaller, more expensive packs of those products and raise its prices on those products due to the higher unit cost.

38)   Woodman's is further concerned that those same customers, upon learning that the large packs they prefer to purchase are still available at Sam's Club and Costco, will stop shopping at Woodman's and start purchasing those products, and other products that, until now, they have been purchasing from Woodman's, at Sam's Club and Costco.

39)   It would be extremely difficult, if not impossible, to calculate the damages flowing from a realization of the concerns identified above.

40)   The loss of these large pack customers to their competitors, Sam's Club and Costco, will irreparably harm Woodman's because it will be impossible for Woodman's to determine and prove what additional products those customers will purchase from Sam's Club and Costco that, until now, they have purchased at Woodman's.

41)   On September 15, 2014, Woodman's wrote to Clorox and its counsel requesting that Clorox provide Woodman's with a copy of its plan prepared in accordance with § 240.8 of the Federal Trade Commission's Federal Regulation 16: Commercial Practices, part 240 - Guides for Advertising Allowances and Other Merchandising Payments and Services. A copy of that Guide was attached to the September 15, 2014, letter. A copy of that correspondence is attached hereto, made a part hereof, and is marked as **Exhibit 5**. (Note: the Federal Trade Commission revised that guide shortly after the letter was sent out. A copy of the revised guide is attached hereto, made a part hereof, and is marked as **Exhibit 5A**.)

42)   Neither Clorox nor Clorox Sales has provided the list of promotional services and allowances offered to its customers who sell at retail that was requested by Woodman's in **Exhibit 5**.

43)   As a consequence of this failure, Woodman's has no knowledge as to what promotional services or allowances Clorox is offering to Sam's Club or Costco, depriving

Woodman's of the opportunity to take advantage of those promotional services or allowances in order to obtain the lowest prices possible for each of those products.

      44)    An injunction preserving the status quo which has existed ever since Plaintiff started purchasing large packs from Defendants will cause Defendants no harm.

      45)    An injunction preserving the status quo which has existed ever since Plaintiff started purchasing large packs from Defendants will benefit retail competition and consumers.

      46)    A copy of a chart showing the addresses of each of the Woodman's store locations and the distance from that store to the nearest Sam's Club and Costco stores is attached hereto, made a part hereof, and is marked as **Exhibit 6**.

      47)    This Affidavit is submitted in Support of Plaintiff's requests for injunctive relief.

 

Clinton W. Woodman

Subscribed and sworn to before me
this 27 day of October, 2014

Name: John A. Kassner
Notary Public-State of Wisconsin
My Commission: is permanent

## List of Exhibits

**Exhibit 1**:    List of products produced and sold by Clorox to Woodman's as of October 1, 2014

**Exhibit 2**:    List of large pack products purchased by Woodman's until October 1, 2014

**Exhibit 3**:    Document labeled "Differentiated Products Offering" presented to Woodman's by Clorox at September 9, 2014 meeting

**Exhibit 4**:    List of unit prices for each of the large pack products as they existed immediately prior to October 1, 2014, and the unit prices offered to Woodman's by Clorox for the smaller packs of those same products that Woodman's can now purchase as of October 1, 2014

**Exhibit 5**:    Woodman's September 15, 2014 letter to Clorox and its counsel, and copy of §240.8 of the Federal Trade Commission's Federal Regulation 16: Commercial Practices, Part 240 – Guides for Advertising Allowances and Other Merchandising Payments and Services

**Exhibit 5A**:    Copy of the revised Federal Trade Commission guide

**Exhibit 6**:    Chart showing the addresses of each of the Woodman's store locations and the distance from that store to the nearest Sam's Club and Costco stores.

027007-00007
24929471_1.DOC