IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

WOODMAN'S FOOD MARKET, INC.,

                  Plaintiff,

  v.

THE CLOROX COMPANY and
THE CLOROX SALES COMPANY,

                  Defendants.

OPINION AND ORDER

14-cv-734-slc

_____

In this civil action for declaratory and injunctive relief, plaintiff Woodman's Food Market, Inc. alleges that defendants The Clorox Company and The Clorox Sales Company have violated the price discrimination provisions of the Robinson-Patman Act, 15 U.S.C. § 13(d) and (e), by offering to sell "large pack" products only to "club" retailers such as Costco and Sam's Club but not to "general market" stores like Woodman's.[1] Clorox has moved to dismiss Woodman's complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. I am denying this motion for the reasons stated below.

ALLEGATIONS OF FACT

I. The Parties

Plaintiff Woodman's Food Market, Inc. is an employee-owned corporation based in Janesville, Wisconsin. It operates 15 retail grocery stores in Wisconsin and Illinois and has approximately 3,200 employees, 2,600 of whom work in Wisconsin.

---

[1] Although Woodman's also refers to § 13(a) in its complaint, dkt. 1 at ¶¶ 57, 59, 77-78, it states in its response brief that "[t]o be clear, Woodman's has not, at this time, presented the Court with a claim that Clorox has violated Subsection 2(a) of the Act." Dkt. 37 at 17. Woodman's explains that a claim under § 13(a) would be premature because Woodman's intends to pursue such a claim only if it obtains a declaratory judgment pursuant to § 13(d) or (e). *Id.* As a result, I have not addressed Clorox's arguments regarding the dismissal of this claim. Clorox may renew its arguments if and when Woodman's decides to pursue such a claim.

Defendants The Clorox Company and The Clorox Sales Company (hereafter referred to in the singular as "Clorox") are Delaware corporations with their corporate offices and headquarters in Oakland, California. Clorox manufactures and sells a variety of consumer and professional products, including bleach, cleaning supplies, charcoal, cat litter, sandwich bags, wraps, containers, water filtration products and personal care products.

Woodman's has been a customer of Clorox's for many years. Clorox purchases over 480 different items (known as "stock keeping units" or SKUs) from Clorox.

## II. Clorox Changes the Products Offered to Woodman's

Historically, Woodman's purchased a number of "large pack" products from Clorox. These products are larger containers or packages of a product that typically are offered to customers at a cost savings per unit compared to the price per unit when the product is sold in smaller containers or packages. On September 9, 2014, Clorox's Director of Sales, Customer and Industry Affairs met with representatives from Woodman's to discuss Clorox's plan for a "Differentiated Products Offering." Clorox announced that as of October 1, Woodman's would be classified as a "general market retailer" and placed in a different "channel" than Sam's Club and Costco, two of Woodman's competitors. In a document presented to Woodman's at the meeting, Clorox explained its goals: "simplify its go to market strategy with Club and General Market packs"; "streamline [its] operations and deliver [its] best cost to serve by regulating the products we sell to customers/channels"; "[m]eet[] customer's desire for differentiated products from manufacturers"; and "[c]reate[] the right assortment of sizes and brands for

customers/channels based on their shoppers [to] maximize[] both the customer and Clorox sales." *See* Compl., dkt.1 at exh. 3.

Clorox announced that as of October 1, Woodman's no longer could purchase large packs of any Clorox product except for a Kingsford charcoal 20-lb double pack. Although Woodman's still could purchase smaller packages of all of Clorox's products, Clorox would not sell these products to Woodman's at the large-pack unit price that Woodman's had been paying; in many cases, the unit price would increase. Clorox would permit only Sam's Club, Costco and BJ's (a large scale retailer not active in Wisconsin) to purchase Clorox's large packs, which meant that these three retailers would be able to buy and resell the large-pack items at a lower unit cost than Woodman's could offer on smaller packs of these same products.

Woodman's believes that many of its large-pack customers are attracted to large packs not just because the unit price is lower, but also because they don't have to buy the product and tote it home as frequently. Further, many of Woodman's customers cannot afford to purchase memberships in retailers like Sam's Club and Costco. As a result of Clorox's decision, these customers will have no choice but to pay higher prices for those products when they buy them at Woodman's. On the flipside of this coin, Woodman's also expresses concern that when customers who *can* afford club memberships discover that Clorox large packs still are available at the club stores, these customers will stop shopping at Woodman's and start purchasing those products (and the other products they need) from the club stores.

3

OPINION

**I. Legal Standards**

Clorox has moved to dismiss each of Woodman's claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. In ruling on a Rule 12(b)(6) motion, the court accepts all well-pleaded allegations as true and draws all inferences in favor of the plaintiff. *Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008) (citations omitted). The complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citations omitted). This means that the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). As the Court of Appeals for the Seventh Circuit has explained, a complaint "must suggest that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above a speculative level.'" *Equal Employment Opportunity Commission v. Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-62 (2007)).

In deciding a Rule 12(b)(6) motion, the court may consider documents attached to the complaint, including letters and contracts, without converting the motion into one for summary judgment. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012) (citing Rule 10(c)); *Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452-53 (7th Cir. 1998). Further, where allegations in the complaint are contradicted by written exhibits attached to the complaint, the exhibits trump the allegations. *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010).

4

Woodman's has brought its claims under the price discrimination provisions of the Robinson-Patman Act, 15 U.S.C. § 13, which state:

> **(d) Payment for services or facilities for processing or sale**
>
> It shall be unlawful for any person engaged in commerce to pay or contract for the payment of anything of value to or for the benefit of a customer of such person in the course of such commerce as compensation or in consideration for any services or facilities furnished by or through such customer in connection with the processing, handling, sale, or offering for sale of any products or commodities manufactured, sold, or offered for sale by such person, unless such payment or consideration is available on proportionally equal terms to all other customers competing in the distribution of such products or commodities.
>
> **(e) Furnishing services or facilities for processing, handling, etc.**
>
> It shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers of a commodity bought for resale, with or without processing, by contracting to furnish or furnishing, or by contributing to the furnishing of, any services or facilities connected with the processing, handling, sale, or offering for sale of such commodity so purchased upon terms not accorded to all purchasers on proportionally equal terms.

These sections generally prohibit a seller from paying allowances or furnishing services to promote the resale of its products unless the allowances or services are offered to all competing customers on proportionally equal terms. *Guides for Advertising Allowances and Other Merchandising Payments and Services*, 79 FR 58245-01 at 58246, 16 C.F.R. Part 240 (FTC Sept. 29, 2014). Promotional services or facilities are those that "somehow aid the buyer in reselling the product, such as advertising, packaging, informational brochures, and the like." Areeda Hovenkamp, XIV *Antitrust Law* ¶ 2363e at p. 291 (3d ed. 2012). Only those services "necessary to facilitate the reseller's subsequent marketing" are covered by the two provisions. *Id.* at p. 292.

Subsection (d) covers situations in which the seller pays a favored buyer for promotional services performed by the buyer; subsection (e) covers situations where the seller provides such services directly to the buyer. Julian Von Kalinowski, 1 *Antitrust Laws and Trade Regulation: Desk Edition* § 5.10[2] (2d ed. 2014) (citing *FTC v. Simplicity Pattern Co.*, 360 U.S. 55, 65 (1959)). The two subsections are similar in all other respects and have been interpreted virtually identically. *Id.* at § 5.10[1]. I note that Woodman's has alleged violations of both subsections but in opposition to dismissal has advanced arguments only with respect to subsection (e), which seems to fit the facts of this case more closely. Because Clorox has advanced the same arguments with respect to both subsections, it is unnecessary to distinguish between the two.

## II. Analysis

The crux of the parties' dispute is whether the large packs offered by Clorox only to the club stores can be considered a promotional service under the act. Woodman's argues that the large packs constitute special packaging that helps Clorox's retail customers resell the product to the general public. Clorox argues that package size is not a service—a 42-pound bag of cat litter is just a product—so that Woodman's complaint fails because Clorox cannot be held liable for merely refusing to sell its products to a particular retailer. *See Harper Plastics, Inc. v. Amoco Chemicals Corp.*, 617 F.2d 468, 470 (7th Cir. 1980) (Section "2(e) does not prohibit a seller from choosing its customers and from refusing to deal with prospective purchasers to whom, for whatever reason, it does not wish to sell").

Clorox points out that no federal court has addressed whether a special package size constitutes a promotional service under subsection (d) or (e) of the act. In the absence of case

6

law, Woodman's relies on a pair of old-but-never-revoked administrative decisions and a series of more recent FTC guidelines. *See In The Matter of General Foods Corporation*, 52 F.T.C. 798 (1956); *In the matter of Luxor, Ltd.*, 3l F.T.C. 658 (1940); *Guides for Advertising*, 79 FR 58245-01. In *Luxor*, the FTC found that because the "junior" size cosmetic products offered by Luxor were more convenient to carry, reduced waste and promoted freshness, the special packaging size facilitated the resale of the products and constituted a promotional service or facility under subsection (e). 31 F.T.C. at 63. Similarly, in *General Foods*, the hearing examiner determined that the corporation's decision to offer an institutionalized size package of Maxwell House Coffee to only some of its customers violated subsection (e). 52 F.T.C. at 816-17. In both cases, the products at issue were of the same grade and quality irrespective of the size of the container in which they had been packaged.

Subsequent to these decisions, the FTC published guidelines in 1969 to help businesses comply with subsections (d) and (e). These guidelines were revised in 1990 and again in 2014. 79 FR at 58245. Section 240.7 of the guidelines recognizes that "'services' or 'facilities' have not been exactly defined by the statute or in decisions" and sets forth a non-exhaustive list of activities that the FTC considers to be promotional services under subsections (d) and (e); the list expressly includes "special packaging, or package sizes." 16 C.F.R. § 240.7. The guidelines explain that one example of "special packaging" is a seller providing its regularly offered multi-packs of individually wrapped candy bars to retailers in Halloween-themed packaging during the Halloween season. *Id.* In commentary to the 2014 guidelines, the FTC explained its decision to keep special packaging and package sizes on its list of covered promotional services:

> The Antitrust Section urged that "special packaging and package sizes" be deleted from the list because "the established law is now

7

> clear that partial refusals to deal with particular resellers, including refusals to sell them particular products in a product line, are not covered by the [R-P Act]." NGA opposed that suggestion, stating that the discriminatory provision of special packaging and package sizes continues to be used to advantage "power buyer[s]" when they are given the option to purchase special packaging or package sizes and competing customers are not, thereby creating "class of trade distinctions."
>
> All of the decisions cited by the Antitrust Section predate the Commission's 1990 revision of the Guides, and none of them squarely addressed the question of whether the provision of special packaging or package sizes to only some competing customers may violate section 2(e) of the Act.
>
> 79 FR at 58248.

Clorox argues that, unlike the Halloween-themed packaging described in the guidelines, its large-size products are not a temporary gimmick to drive up business during a particular season. That's true but unpersuasive. Nothing in the guidelines or the FTC decisions indicates that the statutory prohibitions on price discrimination apply only to seasonal or temporary promotions. In fact, both *Luxor* and *General Foods* involved specially-sized products that were offered on a year-round basis, just like Clorox's large-size products. As in *Luxor* and *General Foods*, it is reasonable to conclude that the special size of Clorox's large-packs is connected to the resale of those products. Woodman's has alleged that it is more convenient for customers to purchase and carry home large-pack products, and the large-packs can be (and are) offered to customers at a lower cost per unit than the smaller packs of the same product.

Although *Luxor* and *General Foods* seem dispositive, Clorox dismisses these decisions as non-binding and antiquated, asserting that they do "not provide a sound basis for asking this Court to adopt a sweeping expansion of the Robinson-Patman Act." Dkt. 21 at 8-9. According to Clorox, the FTC has been backing away from its decision in *Luxor* for decades. To illustrate

its point, Clorox cites *In re Gibson*, 95 F.T.C. 553 (1980), in which the commissioner stated: "Because of the easier threshold of proof carved out for Sections 2(d) and 2(e), the Commission and the courts have an obligation to ensure that the jurisdictional prerequisites of those sections are reasonably, and not expansively, construed." *Id.* at *92.

In *Gibson*, however, the FTC was grappling generally with whether Gibson's actions in inducing their suppliers to offer payments and special pricing only to Gibson's family-owned and franchised stores at a trade show constituted violations of subsection (a) versus subsections (d) and (e). *See id.* at 93-4 (noting purpose of (d) and (e) is "prohibiting outright hard-to-detect, disguised [price] discrimination in the form of promotional allowances" to encourage resale and not initial purchase of product). Nothing in *Gibson* addresses *Luxor* or the question whether offering different sizes of the same product can be construed as special packaging. *Id.* at 94 (finding (d) and (e) did not apply because trade show perks benefitted Gibson stores with initial purchase and not ultimate consumers on resale).

Clorox also mentions in a footnote that the Supreme Court has overturned decisions similar to *Luxor* as inconsistent with the antitrust law's goal of protecting competition. *See Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 889–92 (2007); *State Oil Co. v. Khan*, 522 U.S. 3, (1997); *Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 54–57 (1977). However, as Woodman's points out, these decisions addressed whether various forms of vertical price restraints are *per se* violations of § 1 of the Sherman Act[2]; none involved any provision of the Robinson-Patman Act. *Id.*

---

[2] Section 1 of the Sherman Act generally prohibits agreements or contracts that restrain interstate trade or commerce. *Leegin*, 551 U.S. at 885.

In sum, the FTC's decisions in *Luxor* and *General Foods* are directly on point in this case, and Clorox has failed to persuade me that they are no longer good law. Further, the FTC has made clear in its recently revised guidelines that even though Clorox may refuse to deal with a particular retailer, Clorox cannot use special packaging and package sizes to benefit only certain customers. Woodman's allegations are sufficient to state a claim under the Robinson-Patman Act.

ORDER

IT IS ORDERED that defendants' motion to dismiss this lawsuit, dkt. 20, is DENIED.

Entered this 2nd day of February, 2015.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge