IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| WOODMAN'S FOOD MARKET, INC., | |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| THE CLOROX COMPANY and THE CLOROX SALES COMPANY, | 14-cv-734-slc |
| Defendants. | |

---

In this civil action for declaratory and injunctive relief, plaintiff Woodman's Food Market, Inc. alleges that defendants The Clorox Company and The Clorox Sales Company ("Clorox") have violated the price discrimination provisions of the Robinson-Patman Act, 15 U.S.C. § 13(a), (d) and (e), by offering to sell "large pack" products only to "club" retailers such as Costco and Sam's Club and not "general market" stores like Woodman's. In an order entered on February 2, 2015, I denied Clorox's motion to dismiss under Fed. R. Civ. P. 12(b)(6), finding that even though Clorox legally may refuse to deal with a particular retailer, the use of special packaging and package sizes to benefit only certain customers stated a claim sufficient to survive front-end dismissal. Dkt. 50. Since then, things have zigged and zagged a bit:

On February 24, 2015, Clorox unilaterally chose to end all business dealings with Woodman's. That same day, Clorox moved to dismiss Woodman's complaint as moot because Woodman's no longer was a purchaser of its products and therefore could not suffer any further alleged discrimination. Dkt. 63. Woodman's opposes that motion, arguing that it remains a "purchaser" under the act because now it will buy Clorox products through one or more wholesalers. Dkt. 69. In addition, Woodman's now seeks to amend its complaint to add claims under § 1 of the Sherman Act. Dkt. 68. Clorox rejoins that its decision to terminate its business

relationship with Woodman's has deprived this court of subject matter jurisdiction in this case, which in turn prevents the court from granting Woodman's leave to amend.

Because Woodman's has shown that it may still qualify as a purchaser with standing under the Act, I am denying Clorox's motion to dismiss and granting Woodman's motion for leave to file an amended complaint.

OPINION

**I. Legal Standard**

As an initial matter, the parties dispute how the court should characterize Clorox's pending motion to dismiss. Clorox contends that the complaint is moot, but it does not identify in its motion or brief which rule of civil procedure it is relying on. Woodman's apparently construed the motion as a Rule 12(b)(6) motion to dismiss for failure to state a claim and argues that the motion should be converted to a motion for summary judgment under Rule 12(d) because Clorox relies on matters outside the pleadings.

In its reply brief, Clorox states that it is moving for dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) and may rely on affidavits and other materials supporting its motion. *See United Phosphorus Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003); *Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999) ("[W]here evidence pertinent to subject matter jurisdiction has been submitted . . . the district court may properly look beyond the jurisdictional allegations of the complaint . . . to determine whether in fact subject matter jurisdiction exists.") (internal quotation marks and citation omitted). The Court of Appeals for the Seventh Circuit has made clear that "[f]ederal courts lack subject matter jurisdiction when a case becomes moot." *Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 492 (7th Cir. 2011).

Therefore, Clorox's motion is properly characterized as a motion brought pursuant to Rule 12(b)(1), and it is unnecessary to convert the motion to a motion for summary judgment under Rule 12(d).

**II. Analysis**

Clorox contends that Woodman's action for declaratory and injunctive relief[1] has become moot because Clorox has ended its customer relationship with Woodman's, a decision that Clorox says was within its rights under the Robinson-Patman Act, 15 U.S.C. § 13. *See Harper Plastics, Inc. v. Amoco Chemicals Corp.*, 617 F.2d 468, 470-71 (7th Cir. 1980) (agreeing with district court that the Act does not prohibit seller from choosing its customers or from refusing to deal with purchasers to whom it does not wish to sell); *Mullis v. Arco Petroleum Corp.*, 502 F.2d 290, 294 (7th Cir. 1974) (statute does not require seller to create or maintain customer relationship with any buyer). Therefore, contends Clorox, no live controversy remains in this lawsuit because Woodman's cannot claim protection under §§ 13(d) and (e) of the Act because only a "purchaser" may do so. *Harper Plastics*, 617 F.2d at 470-71; *see also Wisconsin Right to Life State Political Action Comm. v. Barland*, 664 F.3d 139, 149 (7th Cir. 2011) ("A case must present a live controversy at the time of filing, contain a live dispute through all stages of litigation, and the parties must continue to have a personal stake in the outcome of the lawsuit throughout its duration."). Extending that reasoning, Clorox contends that without continuing jurisdiction, the court cannot even grant Woodman's leave to amend its complaint to add a separate claim under the Sherman Act.

---

[1] Woodman's does not seek monetary damages in this case.

Generally, a case may become moot where the defendant has completely discontinued the challenged activity, the discontinued activity has no present effects, and the defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated. *Chicago United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 947 (7th Cir. 2006); 13C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3533.5 (3d ed. 2013). Clorox points out that because it has ceased all sales to Woodman's, there no longer is any danger that it will sell to Woodman's on discriminatory terms. Woodman's responds that notwithstanding this freeze-out, Woodman's continues to be a purchaser within the meaning of the Act because it continues to purchase Clorox products through one or more wholesalers. Dkt. 71 (affidavit of Woodman's procurement director).

The two price discrimination provisions at issue in this case prohibit certain actions by sellers with respect to promotions offered to their buyers. Although § 13(d) refers to "customers" and § 13(e) refers to "purchasers" in describing who is protected by the Act, the two terms are used interchangeably. 16 C.F.R. § 240.4 ("The word 'customer' which is used in section 2(d) of the Act includes 'purchaser' which is used in section 2(e)."); Areeda Hovenkamp, XIV *Antitrust Law* ¶ 2363b (3d ed. 2012). Woodman's points out that in the *Guides for Advertising Allowances and Other Merchandising Payments and Services*, the Federal Trade Commission (FTC) has broadly defined a "customer" to include "any person who buys for resale directly from the seller, or the seller's agent or broker" and "any buyer of the seller's product for resale who purchases from or through a wholesaler or other intermediate reseller." 16 C.F.R. § 240.4. Clorox contends that the guidelines are not entitled to deference because the commission has stated that they "do not carry the force of law," 79 Fed. Reg. 58245, 58253 (Sept. 29,

2014); multiple agencies share responsibility for enforcing the Robinson-Patman Act, creating a risk that the same statutory provision will be interpreted differently by different agencies, *Rapaport v. U.S. Dep't of Treasury, Office of Thrift Supervision*, 59 F.3d 212, 216 (D.C. Cir. 1995); and the courts and not federal agencies are charged with interpreting broadly worded statutes. But even though the *Guides* may not have the force of law, they are instructive in this case, particularly in light of Supreme Court precedent on this issue.

Shortly before the FTC issued the guidelines in 1969, the Supreme Court addressed the definition of "customer" in *F.T.C. v. Fred Meyer, Inc.*, 390 U.S. 341 (1968). There, the seller had paid preferential promotional allowances to a direct-buying retailer but did not make the same allowances available to retailers that purchased through wholesalers. The Court found that the seller's program should have made comparable allowances, presumably through the wholesalers, to the indirect purchasers:

> If we were to read "customer" as excluding retailers who buy through wholesalers and compete with direct buyers, we would frustrate the purpose of s 2(d). We effectuate it by holding that the section includes such competing retailers within the protected class.

*F.T.C. v. Fred Meyer, Inc.*, 390 U.S. 341, 351 (1968).

Woodman's seeks–but does not obtain–additional support from a decision by the Court of Appeals for the Sixth Circuit in which the court discussed the reach of the *Fred Meyer* decision in a case where both the favored and disfavored parties purchased through intermediaries. *Lewis v. Philip Morris Inc.*, 355 F.3d 515 (6th Cir. 2004). In *Lewis*, cigarette vending machine operators, some of whom purchased indirectly through wholesalers, alleged that Phillip Morris offered promotions directly to convenience stores but did not offer any such promotions to the vending

5

machine operators, either directly or indirectly through the wholesaler. Although Woodman's cites language from *Lewis* that appears to grant standing to the cigarette vendors who purchased through wholesalers, this is not the court's actual holding. The opinion in *Lewis* was entered per curiam by a sharply divided panel. Although the majority confirmed *Fred Meyer*'s definition of the term "customer" in §§ 13(d) and (e), it actually refused to grant standing to the cigarette vendors who purchased through wholesalers. The majority found that an action cannot be maintained where both the favored and disfavored parties are indirect purchasers. *Id.* at 526-27. Thus the Sixth Circuit "would limit *Fred Meyer* to its actual situation—namely, where the defendant offered [promotions] to a large retailer who purchased directly but failed to offer them either to a wholesaler intermediary, or to the retailer customers of that intermediary." Hovenkamp ¶ 2363d2 at p. 291. That said, Woodman's overselling of *Lewis* is of no consequence to this court's analysis because the facts here align more tightly with the facts in *Fred Meyer*. Woodman's alleges that Clorox offers special packaging to large club stores that purchase directly from Clorox but fails to offer the same special packaging to general market stores like Woodman's, even when they purchase Clorox products through wholesalers.

Clorox posits without elaboration that *Fred Meyer* and *Lewis* are distinguishable because neither case involved a seller's refusal to deal directly with a customer. Without more, it is unclear how this distinction would have made a difference in either case. The Supreme Court explained in *Fred Meyer* that

> We hold only that, when a supplier gives allowances to a direct-buying retailer, he must also make them available on comparable terms to those who buy his products through wholesalers and compete with the direct buyer in resales. Nothing we have said bars a supplier, consistently with other provisions of the antitrust laws, from utilizing his wholesalers to distribute

> payments or administer a promotional program, so long as the supplier takes responsibility, under rules and guides promulgated by the Commission for the regulation of such practices, for seeing that the allowances are made available to all who compete in the resale of his product.

*Fred Meyer*, 390 U.S. at 358.

If the wholesalers from which Woodman's now purchases Clorox products are constrained by Clorox's decision to sell large-size products only to club stores, then the rule announced in *Fred Meyer* would apply to Woodman's. *See also* Hovenkamp ¶ 2363d2 at p. 289 ("*Fred Meyer* stands for the proposition that a seller's duty to provide proportionally equal promotional services or facilities, or payment therefor, extends downstream to buyers competing with each other at the same functional level, even if one set of buyers purchases directly from the defendant while another set purchases through intermediaries.").

Because it is possible that Woodman's can be considered a "customer" and "purchaser" with standing under the act, at least at this early stage in the litigation, Clorox is not entitled to have this lawsuit dismissed. To the extent that Clorox has additional bases to challenge whether Woodman's qualifies as a purchaser given the specific facts of this case, Clorox may raise these points at summary judgment or trial after the parties have had an opportunity to develop the record.

### III.  Motion for Leave to Amend Complaint

Clorox opposes Woodman's motion for leave to amend solely on the ground that the case became moot when Clorox stopped selling to Woodman's on February 24, 2015, thereby depriving the court of subject matter jurisdiction. On March 17, 2015, Woodman's notified

Clorox that it intended to file an amended complaint, but Clorox asked Woodman's to delay filing the proposed amended complaint so that the parties could attempt settlement. In return, Clorox agreed not to challenge the motion to amend as untimely. Because I have found that the case is not moot and there is no other apparent reason for denying Woodman's leave to amend, I will grant leave. *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given'"); Fed. R. Civ. P. 15(a)(2) ("court should freely give leave [to amend] when justice so requires").

ORDER

IT IS ORDERED that:

(1) Defendants' motion to dismiss this lawsuit for lack of subject matter jurisdiction, dkt. 63, is DENIED; and,

(2) Plaintiff's motion for leave to amend its complaint, dkt. 68, is GRANTED.

Entered this 27th day of April, 2015.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge