UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

**WOODMAN'S FOOD MARKET, INC**.
2631 Liberty Lane
Janesville, Wisconsin 53545,

        Plaintiff,

   v.

**THE CLOROX COMPANY**
a Delaware corporation
1221 Broadway
Oakland, California 94612,

**THE CLOROX SALES COMPANY**
a Delaware corporation
1221 Broadway
Oakland, California 94612,

     And

**UN-NAMED CO-CONSPIRATORS**

        Defendants.

Case No. 14-CV-734

---

### **PLAINTIFF'S FIRST AMENDED COMPLAINT**

---

### **NATURE OF ACTION**

1.    Plaintiff, Woodman's Food Market, Inc. (hereinafter "Woodman's") brings this action for declaratory relief pursuant to 28 U.S.C.A. § 2201 and Federal Rule 57, and for injunctive relief pursuant to Section 16 of the Clayton Act, to enjoin and remedy violations of 15 U.S.C.A. §§ 1, 13(d) and 13(e). This Court has jurisdiction over such claims pursuant to 15 U.S.C.A. §§ 22 and 26, and 28 U.S.C.A. § 1391.

## THE PARTIES

2.    Plaintiff, Woodman's Food Market, Inc. (hereinafter "Woodman's"), is a Wisconsin Corporation with its principal offices located at 2631 Liberty Lane, Janesville, Wisconsin 53545. Woodman's is engaged in the operation of retail grocery stores in the states of Wisconsin and Illinois. Woodman's is an employee-owned corporation with approximately 3,200 employees, 2,600 of which work in Wisconsin.

3.    Defendant, The Clorox Company (hereinafter "Clorox"), is a Delaware corporation with its corporate offices and headquarters located at 1221 Broadway, Oakland, California 94612. As Clorox states in its website, "Clorox is a global company with leading brands that have become household names including, but not limited to, its namesake Clorox® bleach and cleaning products; Green Works® naturally derived cleaning products; Ayudín® and Poett® home care products; Pine-Sol® dilutable cleaner; Fresh Step® cat litter; Kingsford® charcoal; Hidden Valley® and K C Masterpiece® dressings and sauces; Brita® water filtration products; Glad® bags, wraps and containers; and, Burt's Bees® natural personal care products." It had annual sales in 2013 in excess of five billion dollars.

4.    Defendant, The Clorox Sales Company (hereinafter "Clorox Sales"), is, on information and belief, a subsidiary of The Clorox Company, and is incorporated in the state of Delaware, with its principal offices and headquarters located at 1221 Broadway, Oakland, California 94612. Plaintiff is not acquainted with all of the activities of said defendant, but they include the sale of products manufactured by The Clorox Company to retailers across the United States, including, without limitation, the states of Wisconsin and Illinois.

## JURISDICTION AND VENUE

5.    Jurisdiction is pursuant to 28 U.S.C.A. § 1331 (federal question) and 28 U.S.C.A. § 1337 (antitrust).

6.    Woodman's is, and at all times relevant to this action has been, the owner and operator of a chain of 15 retail grocery stores located in the states of Wisconsin and Illinois. It operates 6 stores and has its principal offices in the Western District of Wisconsin.

7.    Clorox is, and at all times relevant to this action has been, engaged in the worldwide production and sale of consumer retail products which are commonly offered for sale and shipped directly by Clorox to retail grocery stores around the world, including each of the 15 stores operated by Woodman's, among which are the 6 stores located in the Western District of Wisconsin. A list of the products produced and sold by Clorox to Woodman's, as of October 1, 2014, is attached hereto, made a part hereof and is marked as **Exhibit 1**. Clorox ceased making sales directly to Woodman's on February 24, 2015, but Woodman's is informed and does believe that Clorox continues to sell products to wholesalers and other retail stores in the Western District of Wisconsin at the present time.

8.    Clorox Sales, upon information and belief, is and at all times relevant to this action, has been engaged in the sale of consumer retail products manufactured by Clorox, which are commonly offered for sale and shipped directly by Clorox Sales to retail grocery stores around the United States, including, without limitation, the states of Wisconsin and Illinois, including to each of the 15 stores operated by Woodman's, among which are the 6 stores located in the Western District of Wisconsin. A list of the products produced by

Clorox and sold by Clorox Sales to Woodman's, as of October 1, 2014, is attached hereto, made a part hereof and is marked as **Exhibit 1.** Clorox ceased making sales directly to Woodman's on February 24, 2015, but Woodman's is informed and does believe that Clorox continues to sell products to wholesalers and other retail stores in the Western District of Wisconsin at the present time.

9. Venue in this district is proper pursuant to 15 U.S.C.A. §§ 22 and 26, and 28 U.S.C.A. § 1391.

## INTERSTATE COMMERCE

10. Clorox and its subsidiary, Clorox Sales, (hereinafter collectively "Clorox") are engaged in the production and sale of household cleaning and other Clorox consumer products in interstate commerce. They sell and deliver a substantial number of Clorox consumer products to retailers across the United States, including to the 15 stores operated by Woodman's in Wisconsin and Illinois, as well as to wholesalers and other retailers in Wisconsin and Illinois, including competing retail stores operating under the trade names of Sam's Club and Costco.

11. Clorox employs a broker, Acosta, Inc., d/b/a Acosta Sales and Marketing (hereinafter "Acosta"), to solicit purchase orders as a broker for Clorox products in the states of Wisconsin and Illinois.

12. At all times relevant to this litigation, Clorox has sold and continues to sell household cleaning and other Clorox consumer products to grocery wholesalers located in Wisconsin and northern Illinois, including to wholesalers located in the Western District of Wisconsin.

13.    At all times relevant to this litigation, Woodman's has purchased and continues to purchase Clorox household cleaning and other Clorox consumer products from wholesalers in Wisconsin and other states.

14.    The method by which Woodman's purchases products from Clorox has historically varied by product. In many cases prior to October 1, 2014, Woodman's contacted Acosta in Waukesha, Wisconsin, to request that it prepare a purchase order on a form created by Woodman's. Woodman's then signed and then submitted its written purchase orders to purchase products from Clorox to Acosta. In all such cases, the purchase orders indicated that Woodman's was submitting its offer to The Clorox Company in Oakland, California. Acosta then forwarded the Woodman's purchase orders, Woodman's presumes, to The Clorox Company. In some cases, The Clorox Company shipped the ordered Clorox products directly to Woodman's stores in Wisconsin or Illinois. In other cases, The Clorox Sales Company shipped the product directly to Woodman's. Upon delivery to Woodman's, Clorox Sales sent an invoice for those products directly to the Woodman's offices in Janesville, Wisconsin, with instructions that checks be made payable to Clorox Sales and mailed to the Clorox Sales office in Dallas, Texas.

15.    In other cases, both prior to October 1, 2014, and subsequent to that date and up to the current time, Woodman's has purchased and continues to purchase Clorox products from any of a number of grocery wholesalers located both in Wisconsin and in other states.

## BACKGROUND OF CLAIMS

16.    Paragraphs 1-15 are restated as if fully set forth herein.

17.    Prior to October 1, 2014, representatives of several vendors have orally advised Woodman's that Sam's Club and/or Costco have insisted that vendors enter into contracts

providing club stores with the exclusive right to purchase large packs from the vendors, to the exclusion of all retailers who are not in the "club channel."









21. The intent, object, or purpose of the concerted refusal to deal, and the effect thereof, is to: (a) restrain, suppress, or eliminate competition in the sale of large packs of Clorox products in the areas served by Woodman's, and (b) to prevent or hinder Woodman's from competing in that market area.

22. Clorox and its co-conspirators have committed certain overt acts with the intent and for the purpose of furthering the concerted refusal to deal. These acts include, but are not limited to: the acts described and set forth in paragraphs 17 and 19 above, and in paragraph 38 below.

23. The above-described concerted refusal to deal occurred in or affected interstate commerce in that the affected sales were made by and with entities outside of Wisconsin, and the flow of Clorox products in normal streams of interstate commerce. By engaging in the above-described concerted refusal to deal, Clorox has violated 15 U.S.C.A. § 1.

24. As a direct and proximate result of the concerted refusal to deal described herein: (a) upon information and belief, customers lost the benefit of full competition and paid more for Clorox products than they would have paid in a competitive marketplace, unfettered

by Clorox and its co-conspirators' collusive and unlawful activities, and (b) competition in the sale of Clorox products was restrained and suppressed in the market areas served by Woodman's.

25. Woodman's has been injured by the concerted refusal to deal described herein in that it has been restricted from participation in the sale of Clorox products, both large and small packs, in the markets served by Woodman's, and will suffer incalculable sales and lost profits as a consequence of the unlawful conduct of Clorox and its co-conspirators.

26. Woodman's has been a customer of Clorox for many years, purchasing over 480 different items (hereinafter referred to as "SKUs") at the present time.

27. Until October 1, 2014, among the list of different SKUs purchased by Woodman's from Clorox were a number of "large pack" products. A list of those large pack products is attached hereto, made a part hereof, and is marked as **Exhibit 2**. Large pack products are just that, larger containers or packages of a particular product that are typically offered to customers at a cost savings per unit of contents over the prices that would typically be paid per unit of that same product when sold in smaller containers or packs. The product within a "large pack" is of the same quality and grade as the product contained within a smaller pack of that same product.

28. Plaintiff contends that providing a customer with a large pack of a particular product constitutes the provision of a promotional service that helps the customer sell a product at retail. As such a promotional service, it must, per 15 U.S.C.A. § 13(e), be made available to all customers on proportionally equal terms.

29. During the year immediately preceding October 1, 2014, Woodman's had purchased the listed dollar amounts of each of the following large pack products from Clorox:

- 192 count Glad Freezer Quart bags - $53,543.88
- 112 count Glad Freezer Gallon bags - $50,711.76
- 144 count Glad Food Storage Zipper Gallon bags - $53,677.36
- 460 count Glad Food Storage Zipper Sandwich bags - $132,210.00
- 150 count Glad Tall Kitchen Drawstring 13 Gallon bags - $164,072.10
- 200 count Glad Tall Kitchen Quick-Tie 13 Gallon bags - $37,334.00
- 42 pound Fresh Step Scoop kitty litter - $176,482.40
- 42 pound Scoop Away Complete kitty litter - $178.891.20
- 2-20 pound Kingsford charcoal - $467,763.60
- 2-64 ounce Kingsford Twin 62 ounce Lighter Fluid - $49,896.00
- 3 pack of 120 ounce Clorox Regular Concentrated Bleach - $70,515.20
- 2-40 ounce Hidden Valley Ranch Dressing - $246,816.00

30. Woodman's is a unique grocery chain in the United States. It operates what are believed to be the 15 largest grocery stores in the world, averaging in excess of 235,000 square feet in size per store.

31. Woodman's stores have the overall appearance of a warehouse food retailer, with industrial utility display shelves, products displayed on pallets, and inventory stacked in shipping boxes above the shelving on top of the industrial utility shelves.

32. Because Woodman's strives to offer its customers the lowest price on the products it sells, it has become the grocer of choice for those purchasing groceries on a budget in its market area.

33. Because of the large size of its stores, Woodman's competes directly for retail customers with the two largest warehouse retailers, Sam's Club and Costco.

34. Many of Woodman's customers cannot afford to purchase memberships at retailers like Sam's Club or Costco.

35. There are Sam's Club stores in each of the market areas served by Woodman's stores.

36. There are Costco stores in each of the market areas served by Woodman's except for Janesville, Beloit, Appleton and Onalaska, Wisconsin, and Rockford, Illinois; but, Costco is currently building a new store in Rockford, Illinois.

37. Both Sam's Club and Costco stores sell grocery items at retail to consumers in direct competition with Woodman's, offering many of the same Clorox products sold by Woodman's.

38. Prior to October 1, 2014, Woodman's was able to purchase large pack items directly from Clorox, but that is no longer the case today.

39. Prior to February 24, 2015, Woodman's was able to purchase smaller packs of Clorox items directly from Clorox, but that is no longer the case today.

40. Since February 24, 2015, Woodman's has been compelled to and is purchasing Clorox products from wholesalers because Clorox is no longer willing to sell directly to Woodman's.

41. Woodman's is currently a customer and purchaser of Clorox products through one or more wholesalers within the meaning of 15 U.S.C.A. §§ 13(d) and 13(e) of the Robinson-Patman Act

42.    Specifically, Woodman's is purchasing Clorox products from Baseline Distributing, Inc. of Rolling Meadows, Illinois, a wholesale grocer, and from Affiliated Foods Midwest Cooperative, Inc., of Kenosha, Wisconsin, a wholesale grocer.

43.    Principal representatives of Woodman's met on September 9, 2014, at the Woodman's headquarters in Janesville, Wisconsin, with a representative of Clorox, Mr. Bob Richardson, the Director of Sales, Customer and Industry Affairs.

44.    At the September 9, 2014 meeting, Woodman's was presented with a document labeled "Differentiated Products Offering." A true and correct copy of that document is attached hereto, made a part hereof, and is marked as **Exhibit 3**.

45.    **Exhibit 3** advised Woodman's that, as of October 1, 2014, Woodman's would be placed into a classification Clorox referred to as "General Market retailers (Grocery, Mass, Drug, including .com for now.")

46.    **Exhibit 3** attempts to explain how Clorox determined that Woodman's, a retail grocer, would be placed into a different channel than two of its competitor retail grocers, Sam's Club and Costco, first, by stating its desire to "simplify its go to market strategy with Club and General Market packs," and second, by stating that "Clorox can streamline our operations and deliver our best cost to serve by regulating the products we sell to customers/channels," and third, by stating that this program, "[m]eets customer's desire for differentiated products from manufacturers," and finally, that the program "[c]reates the right assortment of sizes and brands for customers/channels based on their shoppers, and maximizes both the customer and Clorox sales."

47.  None of these justifications addresses the prohibition against discriminating in price, or discounts or allowances or promotional services between different purchasers of commodities of like grade and quality, set forth in 15 U.S.C.A. §§ 13(a), 13(d) or 13(e).

48.  At that meeting, Clorox advised Woodman's that as of October 1, 2014, Woodman's would no longer be allowed to purchase large packs of any Clorox product, including all but one of the large pack items it had been buying for years from Clorox. The one exception to this ban is the 2 pack of 20 pound bags of Kingsford charcoal.

49.  Woodman's was advised that it could continue to purchase smaller packages containing the identical grade and quality of all of these products, but that the unit price it had been paying for those products would no longer be available, and in virtually all cases, would rise significantly.

50.  Woodman's was advised that, starting on October 1, 2014, only Sam's Club, Costco and BJ's (a large scale retailer not active in Wisconsin) would be allowed to purchase these large "club packs" as they were described by the Clorox representative.

51.  **Exhibit 3** states that "The Clorox Company reserves the right to sell differentiated products to customers and/or channels of customers at our discretion."

52.  Contrary to the wording of **Exhibit 3**, Clorox is not proposing to sell differentiated products to the two "channels." It is merely limiting its willingness to provide a promotional service, a special (large) package of its products, to three favored customers, Sam's Club, Costco and BJ's, in violation of 15 U.S.C.A. § 13(e).

53.  As a consequence of this new policy, two of Woodman's primary competitors, Sam's Club and Costco, are able to buy and sell at retail special large packs of Clorox products that Woodman's is no longer able to sell, giving a significant competitive advantage to

these competitors of Woodman's. In addition, because the unit price on these large pack items is significantly lower than the unit price charged for small packs of these same products, Sam's Club and Costco are generally able to buy and ultimately sell these large pack items at significantly lower unit costs than is available to Woodman's and ultimately its retail customers.

54. On February 24, 2015, Clorox notified Woodman's that it was permanently discontinuing its sale of all Clorox products to Woodman's, effective immediately.

55. Since February 24, 2015, Woodman's has been obligated to purchase Clorox products through independent wholesalers for resale in its 15 stores.

56. As a current wholesale purchaser of Clorox products, Woodman's remains a customer and purchaser of Clorox for purposes of 15 U.S.C.A. §§ 13(d) and 13(e).

57. Woodman's is informed and does believe that, pursuant to the representations made by Clorox in **Exhibit 3**, the "Differential Products Offering" document provided by Clorox to Woodman's on September 9, 2014, Clorox is also refusing to sell large packs of Clorox products to wholesalers, which further prevents Woodman's from being able to purchase those large packs for resale, while its competitors, Costco and Sam's Club, will still be able to offer those large packs for sale at retail.

58. The discriminatory offer of large packs to Woodman's competitors at retail without making those large packs available to Woodman's, either through direct sales or through wholesalers, on proportionally equal terms is in violation of 15 U.S.C.A. § 2(e), and is therefore *per se* illegal, irrespective of its competitive impact.

59. The dollar quantity of these large pack items purchased by Woodman's in the year preceding October 1, 2014, evidences that Woodman's has a significant established

clientele that has come to rely upon Woodman's as their source for buying these large pack products at an affordable price. In addition to price considerations, many of Woodman's large pack customers also prefer to purchase large packs because of the convenience of being able to purchase and carry those products home less frequently than would be the case if they are forced to purchase smaller packs.

60. The unit prices Woodman's must pay to purchase the smaller packs now being offered to it under this new Clorox policy are significantly higher than the unit prices Woodman's has been paying for those products, meaning that Woodman's will have to charge higher unit prices for those products than its customers are accustomed to paying. A list of the unit prices for each of these large pack products as they existed immediately prior to October 1, 2014, and the unit prices offered to Woodman's by Clorox for the smaller packs of those same products that Woodman's can now purchase, as of October 1, 2014, is attached hereto, made a part hereof and is marked as **Exhibit 4**.

61. Without competition from Woodman's or any other retailers, Sam's Club and Costco will be able to raise their prices on large pack items.

62. Many of Woodman's customers cannot afford to purchase memberships in retailers like Sam's Club and Costco, and the loss of the ability to purchase large packs of Clorox products at Sam's Club and Costco will simply mean that those customers will have no choice but to pay higher prices for those products in the future.

63. Woodman's has requested that it be allowed to continue purchasing the special large packs that it has been purchasing for years, but Clorox has denied that request, indicating that only Sam's Club, Costco, and BJ's will be allowed to receive the special large size packaging in the future.

64. As of October 1, 2014, Woodman's had an inventory of large pack items on hand that enabled it to continue offering these products for a brief period of time. Since October 1, 2014, Woodman's exhausted its supply of a number of the large packs of Clorox products, and has been forced to purchase the "large value products" which have been offered to wholesalers and retailers such as Woodman's since October 1, 2014, at higher unit prices than were available on the "large packs" prior to that date.

65. Woodman's will no longer be able to offer these large pack Clorox products to its customers at the low unit prices to which they have been accustomed once its existing supplies of large pack items is exhausted.

66. Woodman's is justifiably concerned that its current large pack purchasers will stop buying their Clorox products from Woodman's once Woodman's is forced to sell the smaller, more expensive packs of those products and raise its prices on those products due to the higher unit cost.

67. Woodman's is further concerned that those same customers, upon learning that the large packs they prefer to purchase are still available at Sam's Club and Costco, will stop shopping at Woodman's and start purchasing those products, and other products that, until now, they have been purchasing from Woodman's, at Sam's Club and Costco.

68. The loss of these large pack customers to its competitors, Sam's Club and Costco, will irreparably harm Woodman's because it will be impossible for Woodman's to determine and prove what additional products those customers will purchase from Sam's Club and Costco that, until now, they have purchased at Woodman's.

69. On September 15, 2014, Woodman's wrote to Clorox and its counsel requesting that Clorox provide Woodman's with a copy of its plan prepared in accordance with

§ 240.8 of the Federal Trade Commission's Federal Regulation 16: Commercial Practices, part 240 - Guides for Advertising Allowances and Other Merchandising Payments and Services. A copy of that Guide was attached to the September 15, 2014, letter. A copy of that correspondence is attached hereto, made a part hereof, and is marked as **Exhibit 5**. (Note: the Federal Trade Commission revised that guide shortly after the letter was sent out. A copy of the revised guide is attached hereto, made a part hereof and is marked as **Exhibit 5A**.)

70. Neither Clorox nor Clorox Sales has provided the list of promotional services and allowances offered to its customers who sell at retail that was requested by Woodman's in **Exhibit 5**.

71. As a consequence of this failure or refusal, Woodman's has no knowledge as to what promotional services or allowances Clorox is offering to Sam's Club or Costco, depriving Woodman's of the opportunity to take advantage of those promotional services or allowances in order to obtain the lowest prices possible for each of those products.

72. Woodman's has incurred, and will continue to incur, attorney's fees, costs and expenses in pursuing each element of the relief requested in this action, and is entitled to recover its attorney's fees, costs and expenses.



74. Clorox terminated Woodman's as a customer on February 24, 2015, in furtherance of the conspiracy with as-yet unnamed club stores as part of an effort to exclude Woodman's and other retailers from competition in the sale of large packs of Clorox products.

75. Because wholesalers mark up the prices they charge for the products they sell over what they pay to Clorox for those products, Woodman's must pay higher prices for Clorox products when purchasing them through wholesalers than it does when it is allowed to purchase those products directly from Clorox.

## FIRST REQUEST FOR DECLARATORY JUDGMENT

76. Paragraphs 1 through 75 are restated as if fully set forth herein.

77. Woodman's sells groceries at retail in 15 stores located in Wisconsin and northern Illinois.

78. Costco and Sam's Club each sell groceries at retail in stores located in Wisconsin and northern Illinois.

79. Woodman's competes directly with Sam's Club for retail customers at Woodman's stores located in each of the metropolitan areas in which its 15 stores are located. Woodman's competes directly with Costco for retail customers at 10 of its 15 stores located in Wisconsin and northern Illinois. A chart showing the addresses of each of the Woodman's store locations and the distance from that store to the nearest Sam's Club and Costco stores is attached hereto, made a part hereof, and is marked as **Exhibit 6**.

80. In **Exhibit 3**, the "Differential Products Offering" document provided by Clorox to Woodman's on September 9, 2014, Clorox expressly stated that:

> "The Clorox Company reserves the right to sell differentiated products to customers and/or channels of customers at our discretion."

- 19 -

81.  Woodman's is requesting declaratory relief to obtain relief from uncertainty and insecurity with respect to its rights and status as a customer vis-à-vis Clorox under the terms and provisions of the Robinson-Patman Act.  The need for seeking declaratory relief arises out of Clorox's expressed determination to place Woodman's into a separate "channel" or category from its two primary competitors, Sam's Club and Costco, and then use that classification as an excuse for discriminating against Woodman's in violation of 15 U.S.C.A. §§ 13(a), 13(d) and 13(e).

82.  Woodman's is also seeking declaratory relief because of the facts set forth more particularly in Document 24, and at paragraphs 17, 19 and 38 of this Amended Complaint, establishing that Clorox and as-yet unnamed club stores have unlawfully acted as a conspiracy to exclude Woodman's and other retailers from competition in the sale of Clorox large pack products, in violation of 15 U.S.C.A. § 1, as revealed by Clorox's expressed determination to place Woodman's into a separate "channel" or category from its two primary competitors, Sam's Club and Costco, and then use that classification as an excuse for discriminating against Woodman's in violation of 15 U.S.C.A. § 1.

83.  Resolution of this question will resolve whether Clorox can or cannot lawfully discriminate against Woodman's under the provisions of the 15 U.S.C.A. §§ (1), of the Sherman Act, and 15 U.S.C.A. §§ 13(a), 13(d) and 13(e) of the Robinson-Patman Act.

84.  Woodman's seeks a ruling permanently declaring that there is no valid basis, under the provisions of the Sherman Act and/or the Robinson-Patman Act, for Clorox to place Woodman's, as an operator of retail grocery stores, into a separate "channel" or classification from any club store, when those stores are also selling commodities of like

grade and quality at retail, and then using its arbitrary placement of Woodman's into that channel or classification as a justification:

a.    for discriminating as to price, under 15 U.S.C.A. § 13(a); or,

b.    for paying or contracting for the payment of anything of value to or for the benefit of a customer of such person in the course of such commerce as compensation or in consideration for any services or facilities furnished by or through such customer in connection with the processing, handling, sale, or offering for sale of any products or commodities manufactured, sold, or offered for sale by such person, unless such payment or consideration is available on proportionally equal terms to all other customers competing in the distribution of such products or commodities, under 15 U.S.C.A. § 13(d); or,

c.    for discriminating in the furnishing of any services or facilities connected with the processing, handling, sale, or offering for sale of such commodity so purchased upon terms not accorded to all purchasers on proportionally equal terms.

85.    Woodman's reserves the right to seek supplemental relief, following an affirmative ruling on this request for declaratory relief, for any damages it may have sustained since filing this action.

## SECOND REQUEST FOR DECLARATORY JUDGMENT

86.    Paragraphs 1 through 85 are restated as if fully set forth herein.

87.    Under subsections (d) and (e) of the Robinson-Patman Act, all allowances and promotional services offered by a seller, such as Clorox, must be made available to all customers selling at retail on a proportional basis. The Act further provides that all customers selling at retail, such as Woodman's, must be given notice of the availability of

each of these promotional services, discounts and allowances available to such customers.

88. In **Exhibit 5**, its September 15, 2014, letter to Clorox, Woodman's asked Clorox to provide it with a copy of the Clorox plan prepared in accordance with § 240.8 of the Federal Trade Commission's Federal Regulation 16: Commercial Practices, part 240 - Guides for Advertising Allowances and Other Merchandising Payments and Services.

89. In that same letter, Woodman's went on to acknowledge that Clorox is not obligated to create such a written plan, but asserted that Clorox is nonetheless obligated to provide Woodman's with the information that such a written plan would contain.

90. To date, Clorox has failed to provide Woodman's with a complete list of the promotional services, discounts and allowances that it offers to its customers.

91. As a consequence, Woodman's is unable to know what promotional services, discounts and allowances are available, or what criteria it must meet in order to qualify for such promotional services, discounts and allowances.

92. Woodman's seeks a ruling permanently declaring that, under the provisions of 15 U.S.C.A. §§ 13(d) and 13(e), Clorox must provide actual notice to all its customers selling a product of comparable grade and quality at retail, of every discount or allowance or promotional service it is offering to any of its customers selling that product at retail, and must make those promotional services, discounts or allowances available to all of its customers selling at retail on proportionally equal terms.

93. Woodman's seeks a further ruling permanently declaring that, under the provisions of 15 U.S.C.A. §§ 13(d) and 13(e), if Clorox fails to notify a customer of the existence of such a promotional service, discount or allowance being offered to a competitor selling at

retail, after that customer has expressly requested disclosure of such programs, Woodman's can thereafter assume that, for purposes of 15 U.S.C.A. § 13(a), those promotional services, discounts or allowances cannot be relied upon by Clorox as a justification for having sold a product to a competitor at a lower price than the price paid by Woodman's.

94. Woodman's reserves the right to seek supplemental relief, following an affirmative ruling on this request for declaratory relief, for any damages it may have sustained since filing this action.

## THIRD REQUEST FOR DECLARATORY JUDGMENT

95. Paragraphs 1 through 94 are restated as if fully set forth herein.

96. In furtherance of the sale by Clorox of Clorox products to favored customers, Clorox announced its intention, effective as of October 1, 2014, to limit the availability of the promotional service of providing large packs of its products to Sam's Club, Costco and BJ's.

97. At the same time, Clorox announced its intention to charge higher unit prices that Woodman's, as a non-favored customer, would be required to pay for the same products when offered in smaller packs, effective as of the same date.

98. Clorox has made no attempt to make this promotional service available to Woodman's on proportionally equal terms commencing on October 1, 2014.

99. Woodman's seeks a ruling permanently declaring that the offer of special size packages of a product of the same grade and quality as those offered to other retail customers constitutes a promotional service, under the provisions of 15 U.S.C.A. § 13(e), which

must be made available to all Clorox customers selling at retail on proportionally equal terms.

100. Woodman's reserves the right to seek supplemental relief for any damages it may sustain following an affirmative ruling on this request for declaratory relief.

## FOURTH REQUEST FOR DECLARATORY JUDGMENT

101. Paragraphs 1 through 100 are repeated as if fully set forth herein.

102. Clorox terminated Woodman's as a customer on February 24, 2015, in furtherance of the conspiracy with as-yet unnamed club stores as part of an effort to exclude Woodman's and other retailers from competition in the sale of large packs of Clorox products.

103. Woodman's is requesting declaratory relief to obtain relief from uncertainty and insecurity with respect to its rights to purchase Clorox products directly from Clorox, because of the facts set forth more particularly in Document 24, and at paragraphs 17, 19 and 38 of this Amended Complaint, establishing that Clorox and as-yet unnamed club stores have unlawfully acted as a conspiracy to exclude Woodman's and other retailers from competition in the sale of Clorox large pack products and by terminating Woodman's as a customer of Clorox, in violation of 15 U.S.C.A. § 1.

104. Resolution of this question will resolve whether Clorox can or cannot lawfully discriminate against Woodman's under the provisions of 15 U.S.C.A. § 1.

105. Woodman's seeks a ruling permanently declaring that there is no valid basis under the provisions of the Sherman Act for Clorox to refuse to sell Clorox products directly to Woodman's.

106. Woodman's reserves the right to seek supplemental relief for any damages it may sustain following an affirmative ruling on this request for declaratory relief.

## FIRST CLAIM FOR INJUNCTIVE RELIEF

107. Paragraphs 1 through 106 are repeated as if fully set forth herein.

108. Clorox will, unless restrained, continue to refuse to sell Clorox products to Woodman's and engage in the actions set forth more particularly in Document 24, and at paragraphs 17, 19 and 38 of this Amended Complaint, in furtherance of the conspiracy between Clorox and as-yet unnamed club stores as part of its effort to exclude Woodman's and other retailers from competition in the sale of large packs of Clorox products in violation of the provisions of 15 U.S.C.A. § (1) of the Sherman Act in order to discourage other retailers from attempting to force compliance with antitrust laws as Woodman's has done in this litigation.

109. As a direct and proximate result of that unlawful conduct, Woodman's is threatened with injury in its business and property in that, it will be forced to pay higher prices for Clorox products purchased through wholesalers than it previously paid when purchasing those products directly from Clorox.

110. Woodman's is entitled to injunctive relief against such behavior under 15 U.S.C.A. § 26.

## SECOND CLAIM FOR INJUNCTIVE RELIEF

111. Paragraphs 1 through 110 are repeated as if fully set forth herein.

112. On information and belief, Clorox will, unless restrained, continue to discriminate by attempting to place Woodman's into a separate "channel" or classification, and using that placement as a justification to take actions in violation of the provisions of 15 U.S.C.A. §§ 13(a), 13(d) and 13(e).

113. On information and belief, Clorox will, unless restrained, act in furtherance of the conspiracy with as-yet unnamed club stores to exclude Woodman's and other retailers

from competition in the sale of large packs of Clorox products, and engage in the acts described more particularly in Document 24, and at paragraphs 17, 19 and 38 of this Amended Complaint, and continue to discriminate by attempting to place Woodman's into a separate "channel" or classification, and use that placement as a justification to take actions in violation of the provisions of 15 U.S.C.A. § 1.

114. As a direct and proximate result of the unlawful conduct of Clorox, Woodman's is threatened with injury in its business and property in that, unless restrained, Clorox will feel free to discriminate against Woodman's in violation of the provisions of 15 U.S.C.A. §1 of the Sherman Act and 15 U.S.C.A. §§ 13(a), 13(d) and 13(e) of the Robinson-Patman Act under the false premise that, because it has placed Woodman's into a different "channel" or classification into which Sam's Club and Costco have been placed, it is free to disregard the provisions of the Sherman Act and Robinson-Patman Act with regards to sales to those favored customers.

115. That unless Clorox is restrained, Woodman's is threatened with the loss of its customers to Sam's Club and Costco because they will be able to offer Clorox products at lower prices than Woodman's can offer.

116. Woodman's is entitled to injunctive relief against such behavior under 15 U.S.C.A. § 26.

117. Woodman's reserves the right to seek supplemental relief for any damages it may sustain following an affirmative ruling on this request for injunctive relief.

### THIRD CLAIM FOR INJUNCTIVE RELIEF

118. Paragraphs 1 through 117 are restated as if fully set forth herein.

119.    On information and belief, Clorox will, unless restrained, continue to discriminate by offering discounts, allowances and promotional services on the sale of products to favored retailers without disclosing the existence of those discounts, allowances and promotional services to competing retailers on proportionally equal terms in violation of 15 U.S.C.A. §§ 13(d) and 13(e).

120.    On information and belief, Clorox will, unless restrained, continue to engage in the actions described more particularly in Document 24, and at paragraphs 17, 19 and 38 of this Amended Complaint, in furtherance of the conspiracy with as-yet unnamed club stores to exclude Woodman's and other retailers from competition in the sale of large packs of Clorox products, continue to discriminate by offering discounts, allowances and promotional services on the sale of large packs of Clorox products to favored retailers without disclosing the existence of those discounts, allowances and promotional services to competing retailers on proportionally equal terms in violation of 15 U.S.C.A. § 1.

121.    As a direct and proximal result of such unlawful conduct, Woodman's will be threatened with injury in its business and property in that, unless Woodman's has notice of the availability of such discounts, allowances and promotional services being offered to its competitors, it will be unable to take advantage of such programs in order to purchase products of comparable grade and quality to those being sold to its competitors at comparable prices and on comparable terms, thereby damaging Woodman's ability to compete with those favored customers.

122.    That unless Clorox is so restrained, Woodman's is threatened with the loss of its customers to Sam's Club and Costco because they will be able to offer Clorox products at lower prices than Woodman's can offer.

123.   Woodman's is entitled to injunctive relief against such behavior under 15 U.S.C.A. § 26.

124.   Woodman's reserves the right to seek supplemental relief for any damages it may sustain following an affirmative ruling on this request for injunctive relief.

## FOURTH CLAIM FOR INJUNCTIVE RELIEF

125.   Paragraphs 1 through 124 are restated as if fully set forth herein.

126.   On information and belief, Clorox will, unless restrained, continue to discriminate in the offer of special size packages of products of comparable grade and quality to some, but not all, of its retail customers without offering to make such packaging available to all of its retail customers on proportionally equal terms, in violation of 15 U.S.C.A. §§ 13(d) and 13(e).

127.   On information and belief, Clorox will, unless restrained, continue to engage in the actions described more particularly in Document 24, and at paragraphs 17, 19 and 38 of this Amended Complaint, in furtherance of the conspiracy with as-yet unnamed club stores to exclude Woodman's and other retailers from competition in the sale of large packs of Clorox products, continue to discriminate in the offer of special size packages of products of comparable grade and quality to some, but not all, of its retail customers without offering to make such packaging available to all of its retail customers on proportionally equal terms, in violation of 15 U.S.C.A. § 1.

128.   As a direct and proximate result of the unlawful conduct of Clorox, Woodman's is threatened with injury in its business and property in that it will be forced to discontinue the sale of large product packs its customers have come to expect to find in its stores, and will have no option but to offer, instead, smaller packs of those same products, at significantly higher unit prices than its customers are accustomed to paying.

129. That, unless restrained, Clorox will continue to deprive Woodman's of: (1) access to the special promotional service of large packs of items that it offers to Woodman's competitors, and (2) the lower unit prices Clorox makes available to large pack purchasers, which will, in turn, force Woodman's to charge higher unit prices for products of the same grade and quality that its competitors will be able to offer to its customers, to the competitive disadvantage and harm of Woodman's.

130. That unless Clorox is restrained, Woodman's is threatened with the loss of its customers to Sam's Club and Costco, and the resultant loss of sales because its customers will be able to buy Clorox products at lower unit costs at the stores of these competitors than will be available at Woodman's stores.

131. That unless Clorox is restrained, Woodman's is threatened with the loss of sales of other products not purchased from Clorox to those customers who make the decision to shop at Sam's Club and Costco.

132. Woodman's is entitled to injunctive relief against such behavior under 15 U.S.C.A. § 26.

133. Woodman's reserves the right to seek supplemental relief for any damages it may sustain following an affirmative ruling on this request for injunctive relief.

### PRAYER FOR RELIEF

**WHEREFORE**, Woodman's prays for relief as follows:

1. A declaration that there is no valid basis, under the provisions of the Sherman Act and/or the Robinson-Patman Act, for Clorox to place Woodman's, as an operator of retail grocery stores, into a separate "channel" or classification from Sam's Club or Costco, when those stores are also selling commodities of like grade and quality at retail, and then

using its arbitrary placement of Woodman's into that channel or classification as a justification;

a.      for discriminating as to price, under 15 U.S.C.A. § 13(a); or,

b.      for paying or contracting for the payment of anything of value to or for the benefit of a customer of such person in the course of such commerce as compensation or in consideration for any services or facilities furnished by or through such customer in connection with the processing, handling, sale, or offering for sale of any products or commodities manufactured, sold, or offered for sale by such person, unless such payment or consideration is available on proportionally equal terms to all other customers competing in the distribution of such products or commodities, under 15 U.S.C.A. § 13(d); or,

c.      for discriminating in the furnishing of any services or facilities connected with the processing, handling, sale, or offering for sale of such commodity so purchased upon terms not accorded to all purchasers on proportionally equal terms.

2.      A declaration that, under the provisions of 15 U.S.C.A. §§ 13(d) and 13(e), Clorox must provide actual notice to all its customers selling a product of comparable grade and quality at retail, of every discount or allowance or promotional service it is offering to any of its customers selling that product at retail, and must make those promotional services, discounts or allowances available to all of its customers selling at retail on proportionally equal terms.

3.      A declaration that, under the provisions of 15 U.S.C.A. §§ 13(d) and 13(e), if Clorox fails to notify a customer of the existence of such a promotional service, discount or allowance being offered to a competitor selling at retail, after that customer has expressly requested

disclosure of such programs, Woodman's can thereafter assume that, for purposes of 15 U.S.C.A. § 13(a), those promotional services, discounts or allowances cannot be relied upon by Clorox as a justification for having sold a product to a competitor at a lower price than the price paid by Woodman's.

4. A declaration that the offer of special size packages of a product of the same grade and quality as those offered to other retail customers constitutes a promotional service, under the provisions of 15 U.S.C.A. § 13(e), which must be made available to all Clorox customers selling at retail on proportionally equal terms.

5. A declaration that there is no valid basis, under the provisions of 15 U.S.C.A. § 1, for Clorox to refuse to sell Clorox products directly to Woodman's.

6. An injunction enjoining Clorox from refusing to sell Clorox products directly to Woodman's and from engaging in the type of actions described in Document 24 seeking to exclude Woodman's and other retailers from competition in the retail sale of Clorox large pack products, in violation of 15 U.S.C.A. § 1.

7. An injunction enjoining Clorox from discriminating against Woodman's in violation of the provisions of 15 U.S.C.A. §§ 1, 13(a), 13(d) and 13(e) by placing Woodman's into a different "channel" or classification than Sam's Club and Costco have been placed in, and using that placement as a justification for unequal treatment.

8. An injunction enjoining Clorox from offering discounts, allowances and/or promotional services on the sale of products to favored retailers without disclosing the existence of those discounts, allowances and/or promotional services to Woodman's on proportionally equal terms, in violation of 15 U.S.C.A. §§ 1, 13(a), 13(d) and 13(e).

9.   An injunction enjoining Clorox from discriminating in the offer of special size packages of products of comparable grade and quality to some, but not all, of its retail customers without offering to make such packaging available to Woodman's on proportionally equal terms, in violation of 15 U.S.C.A. §§ 1, 13(a), 13(d) and 13(e).

10.  An award to Woodman's of its attorney's fees, expenses and costs of this litigation.

11.  An award to Woodman's for such other and further relief as the nature of this case may require, or as this Court deems just, equitable and proper.

Dated this 28th day of April, 2015.

VON BRIESEN & ROPER, S.C.
Attorneys for Plaintiff,
Woodman's Food Market, Inc.


By: _/s/ John A. Kassner_
    John A. Kassner,
    State Bar Number: 1014336
    jkassner@vonbriesen.com

    Kraig A. Byron
    State Bar Number: 1020236
    kbyron@vonbriesen.com

Mailing Address:

VON BRIESEN & ROPER, S.C.
Tenney Plaza – Suite 1000
3 South Pinckney Street
Madison, WI  53703

(608) 661-3969 Direct (John Kassner)
(608) 316-3199 Direct Fax (John Kassner)

(608) 661-3981 Direct (Kraig Byron)
(608) 316-3184 Direct Fax (Kraig Byron)

027007-00007
25336959_1.DOCX

## List of Exhibits

**Exhibit 1**:  List of products produced and sold by Clorox to Woodman's as of October 1, 2014

**Exhibit 2**:  List of large pack products purchased by Woodman's until October 1, 2014

**Exhibit 3**:  Document labeled "Differentiated Products Offering" presented to Woodman's by Clorox at September 9, 2014 meeting

**Exhibit 4**:  List of unit prices for each of the large pack products as they existed immediately prior to October 1, 2014, and the unit prices offered to Woodman's by Clorox for the smaller packs of those same products that Woodman's can now purchase as of October 1, 2014

**Exhibit 5**:  Woodman's September 15, 2014 letter to Clorox and its counsel, and copy of §240.8 of the Federal Trade Commission's Federal Regulation 16: Commercial Practices, Part 240 – Guides for Advertising Allowances and Other Merchandising Payments and Services

**Exhibit 5A**:  Copy of the revised Federal Trade Commission guide

**Exhibit 6**:  Chart showing the addresses of each of the Woodman's store locations and the distance from that store to the nearest Sam's Club and Costco stores

25336959_1.DOCX