IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

WOODMAN'S FOOD MARKET, INC.,

                Plaintiff,

  v.

THE CLOROX COMPANY and
THE CLOROX SALES COMPANY,

                Defendants.

OPINION AND ORDER

14-cv-734-slc

---

In this antitrust case, plaintiff Woodman's Food Market, Inc. has moved for a preliminary injunction to "maintain the status quo" in its business dealings with defendants The Clorox Company and The Clorox Sales Company ("Clorox"). Until October 1, 2014, Woodman's had purchased a variety of "large pack" products from Clorox. In September 2014, Clorox informed Woodman's that it was sorting its retailer customers into categories such as "general market" and "club" stores. Starting October 1, 2014, only club stores could buy certain large pack products from Clorox. Because Clorox had classified Woodman's as a general market store, Woodman's no longer could purchase large pack products from Clorox.

Unable to persuade Clorox to change its mind, Woodman's filed this lawsuit under the price discrimination provisions of the Robinson-Patman Act, 15 U.S.C. §§ 13(a), (d) and (e). Dkt. 1. Clorox parried by unilaterally ending all business dealings with Woodman's on February 24, 2015. Clorox then moved to dismiss Woodman's complaint for lack of jurisdiction, arguing that Woodman's was no longer a "purchaser" under the Act. On April 27, 2015, this court found that Woodman's may still qualify as a purchaser with standing under the Act because Woodman's continues to purchase Clorox products through wholesalers. Dkt. 77. I also

permitted Woodman's to amend its complaint to add a claim of conspiracy to restrain trade under § 1 of the Sherman Act.  *See* Am. Compl., dkt. 78.

Woodman's has clarified that its request for a preliminary injunction is limited to its claims under the Robinson-Patman Act.  Woodman's asks that this court order Clorox to "mak[e] available to Woodman's products which Clorox sold to Woodman's until September 30, 2014, and which Clorox continues to sell to other retailers competing with Woodman's in the distribution of Clorox products."  Dkt. 83.

I am declining to enter a preliminary injunction because Woodman's has failed to show that it will have no adequate remedy at law and it has failed to show that it will be irreparably harmed if an injunction is not issued.

OPINION

A preliminary injunction is an extraordinary remedy that is "never to be indulged in except in a case clearly demanding it."  *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the USA, Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008) (internal citations and quotations omitted).  The party seeking a preliminary injunction must clearly demonstrate that it is entitled to the relief it seeks. *Goodman v. Ill. Dep't of Fin. & Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir. 2005).

To obtain a preliminary injunction, the moving party must meet these threshold requirements:  (1) it has no adequate remedy at law; (2) it will suffer irreparable harm if a preliminary injunction is denied; and (3) there is some likelihood of success on the merits of the claim.  *Girl Scouts*, 549 F.3d at 1086 (citing *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)).  If the moving party fails to establish any one of these requirements, then the

court must deny the injunction. *Id*. (citing *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). If the moving party meets the threshold burden, then the court proceeds to the balancing phase, where it weighs the competing harms to the parties if an injunction is granted or denied and also considers which outcome would be in the public interest. *Id.*; *Planned Parenthood of Ind., Inc. v. Comm'r of the Ind. State Dep't of Health*, 699 F.3d 962, 972 (7th Cir. 2012); *Ezell v. City of Chicago*, 651 F.3d 684, 694 (7th Cir. 2011).

In this case, after the parties had completed their briefing on the preliminary injunction motion, Woodman's filed a motion to unseal documents that Clorox had filed under seal along with Clorox's response to the preliminary injunction motion. Dkt. 39. Clorox replied that it was withdrawing its reliance on the sealed documents and dropping the related "meeting competition defense" that it had raised in opposing the preliminary injunction. Dkt. 43 at 2-3. Clorox contended that if this court reached the preliminary injunction motion, then it would need to decide only two questions: (1) whether Plaintiff has stated a claim as a matter of law under Section 2(e) of the Robinson-Patman Act and (2) whether Plaintiff is likely to incur irreparable harm unless the Court orders Clorox to sell the products at issue to Plaintiff.".[1] Dkt. 43 at 2-3. Because I determined in the April 2015 order that Woodman's has stated a claim under § 2(e), it appears that the only remaining disputed issue is whether Woodman's will suffer irreparable harm if a preliminary injunction is *not* issued.

---

[1] Although Clorox does not discuss whether Woodman's has an adequate remedy at law, I note that this requirement is closely related to that of irreparable harm, and courts often analyze the two factors as one. *Milwaukee County Pavers Ass'n v. Fiedler*, 707 F. Supp. 1016, 1033 (W.D. Wis.) *modified*, 710 F. Supp. 1532 (W.D. Wis. 1989) (citing *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 383-86 (7th Cir. 1984)).

To show irreparable harm, Woodman's must establish that monetary damages are "seriously deficient as a remedy for the harm suffered" and that the harm "cannot be prevented or fully rectified by the final judgment after trial." *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 386 (7th Cir. 1984).  *See also* 11A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2948.1 at p. 129 ("[A] preliminary injunction usually will be denied if it appears that the applicant has an adequate alternative remedy in the form of money damages or other relief.").

Woodman's contends that an award of damages would not adequately compensate it for its losses because it may forever lose current customers who wish to purchase large packs of Clorox products.  Woodman's fears these customers will turn to club stores not only for the large-pack items that Woodman's no longer can provide but also their overall grocery needs. Woodman's argues that because it will not be able to measure such losses "with any degree of certainty," money damages cannot be an adequate remedy.

As Clorox observes, however, Woodman's has presented no evidence to support its position.  Woodman's relies solely on the affidavit of Clinton Woodman, vice president of Woodman's, who states that

> Woodman's is justifiably concerned that its current large pack purchasers will stop buying their Clorox products from Woodman's once Woodman's is forced to sell the smaller, more expensive packs of those products and raise its prices on those products due to the higher unit cost.
>
> Woodman's is further concerned that those same customers, upon learning that the large packs they prefer to purchase are still available at Sam's Club and Costco, will stop shopping at Woodman's and start purchasing those products, and other products that, until now, they have been purchasing from Woodman's, at Sam's Club and Costco.

4

> It would be extremely difficult, if not impossible, to calculate the damages flowing from a realization of the concerns identified above.
>
> The loss of these large pack customers to their competitors, Sam's Club and Costco, will irreparably harm Woodman's because it will be impossible for Woodman's to determine and prove what additional products those customers will purchase from Sam's Club and Costco that, until now, they have purchased at Woodman's.

Dkt. 3 at ¶¶ 37-40.

Mr. Woodman undoubtedly believes what he says, but his conclusory and self-serving statements are too conjectural to provide to support a finding of irreparable harm. *See S & S Sales Corp. v. Marvin Lumber & Cedar Co.*, 457 F. Supp. 2d 903, 908 (E.D. Wis. 2006) (finding same with respect to distributor's assertion that some dealers it served would go out of business if manufacturer not enjoined from selling directly to dealers).

A plaintiff seeking preliminary relief must demonstrate that irreparable injury is *likely* in the absence of an injunction. "Issuing a preliminary injunction based only on a *possibility* of irreparable harm is inconsistent with [the] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis added). *See also East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 704 (7th Cir. 2005) ("Speculative injuries do not justify this extraordinary remedy."); *Tom Doherty Associates, Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 37 (2d Cir. 1995) (cited with approval in *East St. Louis*, 414 F.3d at 704) (plaintiff cannot obtain preliminary injunction by "speculating about hypothetical future injuries").

As Clorox points out, Woodman's has not explained *why* it would not be able to calculate its lost sales of large pack products by looking at past sales of these products and any decline in its sale of similar products in alternative sizes. Also, why does Woodman's believe that customers who had bought large-pack Clorox products along with their other groceries would cease all purchases of all other groceries from Woodman's in favor of shopping exclusively at club stores simply because those stores offered larger packages of a narrow range of goods? Clinton Woodman states that Woodman's competes with club stores for retail customers "because of the large size of its stores." Dkt. 3 at ¶ 12. But club stores specialize in sales of large-sized products, not regular groceries. Although Woodman's *might* lose its sales of large-pack items without a preliminary injunction—a damage that is easily calculable—there is no evidence from which this court may reasonably infer that Woodman's also would lose sales of regular-sized products. In fact, it is possible that sales of regular-sized Clorox products will increase if customers remain loyal to Woodman's and substitute more of the regular-sized packages for the missing large packs. We just don't know. Without some actual evidence from Woodman's, it is not reasonable to conclude that customers who purchase regular-sized packages of non-Clorox products from Woodman's will alter their shopping habits to Woodman's detriment and begin purchasing large-sized packages of these products from a club store when they are seeking large-sized Clorox products.

Because Woodman's has failed to meet the threshold requirement of irreparable harm– and arguably the requirement of no adequate remedy at law–Woodman's is not entitled to a preliminary injunction. *Girl Scouts*, 549 F.3d at 1086.

That's pretty much the end of it, but in *Girl Scouts*, the Court of Appeals for the Seventh Circuit stated that when a district court decides that a party moving for a preliminary injunction has not satisfied one of the threshold requirements, the court nonetheless is encouraged to conduct at least a cursory examination of all the other preliminary injunction considerations in order to expedite appellate review and to protect the interests of the parties. *Girl Scouts*, 549 F.3d at 1087 (citations omitted). It is difficult to analyze the other factors in this case because the parties have focused on the threshold requirement of irreparable harm, but I will quickly review some of the other considerations.

The parties assume that because the court has determined that Woodman's has stated a claim under the Robinson-Patman Act, Woodman's has some likelihood of success on the merits—at least on the limited record currently before the court. However, this finding alone does not outweigh the fact that Woodman's has failed to establish either of the other two threshold factors of irreparable harm or an inadequate remedy at law. The same is true of the considerations related to the competing harms to the parties and the public interest. Although Clorox appears to have abandoned its original arguments related to the competitive harm that Clorox will suffer if it is forced to sell large-pack products to Woodman's,[2] this factor is at best a wash because both parties describe their prospective harm in a speculative and conclusory manner. Finally, the public interest that Woodman's identifies is the desire for "unfettered competition between all retailers" and the assurance that "all consumers can obtain Clorox's products at the least expense." According to Woodman's vice president, because club store

---

[2] As previously noted, Clorox had included evidence related to the harm it would suffer from the issuance of a preliminary injunction but later withdrew its reliance on that evidence when plaintiff moved to unseal it. Dkt. 43.

7

membership fees are $55 to $110 per year, customers will either be forced to pay higher prices for large-pack Clorox products or will not be able to afford them at all. But if this is true, then why would Woodman's customers abandon Woodman's in order to pay *more* for the larger packages at Costco or Sam's Club? This observation would seem to indicate that Woodman's customers are not going anywhere. In any event, Woodman's has failed to adduce any evidence to support its "concerns." It is unclear what large-pack products would be available to customers, what these products would cost, whether there would be acceptable substitutes for these products available at Woodman's for similar prices and how consumers would calculate, weigh and implement their shopping options.

In sum, because Woodman's has failed to make the requisite showing on several key factors, I am denying its motion for a preliminary injunction.

### ORDER

IT IS ORDERED that plaintiff Woodman's Food Market, Inc.'s motion for a preliminary injunction, dkt. 2, is DENIED.

Entered this 28th day of May, 2015.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge